Robert H. MITCHELL et ux., Appellants,

v.

Cecil E. GAULDING, Jr., et al., Appellees.

No. 5153.

Court of Civil Appeals of Texas,
Waco.

July 13, 1972.

Rehearing Denied July 27, 1972.

Saner, Jack, Sallinger & Nichols, Dallas, for appellants.

Strasburger, Price, Kelton, Martin & Unis, John H. Hall, Robert L. Hoffman, Dallas, for appellees.

HALL, Justice.

The defendant-appellant, Robert H. Mitchell, whose wife was formally joined as a defendant, constructed a radio tower 125 feet in height on the lot where their home is located. Whether or not the tower is a prohibited "structure" within the meaning of deed restrictions which, without dispute, apply to the lot is the single question we must decide.

The trial court concluded that the tower violated the deed restrictions. It granted the plaintiffs-appellees' motion for summary judgment for mandatory injunction requiring the removal of the tower, and overruled the defendants' motion for summary judgment. We affirm.

In February, 1950, the then owners of all ten lots in the Walnut Park Addition to the City of Dallas, Texas, adopted and filed in the deed records of Dallas County a covenant of use restrictions for those lots, agreeing therein that the restrictions should "run with the land."

The plaintiffs, at least five of whom resided in the subdivision at the time of Mitchell's purchase and at the time of suit, originally brought this action to have the tower removed on the grounds that it is a

nuisance, and that it is a prohibited structure within the meaning of section two of the restrictions. In an amended pleading, the plaintiffs abandoned their theory of nuisance.

Section two of the restrictions provides in part as follows:

"No structure shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling and a private garage for not more than three cars, and outbuildings necessary for typical single-family use."

The parties agree that the disposition of their dispute turns upon the meaning to be given to the word "structure" as that term is used in the second section of the restrictions. Mitchell contends that the word was intended only to refer to and include buildings. The plaintiffs insist that it was used in a broader sense and includes the radio tower.

■ It is the general rule that in construing covenants which restrict the use of land, all doubt should be resolved in favor of the free use of property and against restrictions. Southampton Civic Club v. Couch, 159 Tex. 464, 322 S.W.2d 516, 518 (1959). It is the equally settled rule that the construction of such covenants requires that the instrument as a whole and the circumstances and conditions surrounding the property should be considered, so that the manifest object of the restriction should be fairly and justly determined. Fischer v. Reissig (Tex.Civ.App., 1940, writ ref.) 143 S.W.2d 130, 131.

The restrictions are not ambiguous, and there is no dispute in the facts.

Section one of the restrictions requires that all lots in the subdivision "shall be residential lots." Other provisions in the covenant regulate, among other things, the number of stories and floor area of the residences and their masonry content, front and interior yard space, the construction and location of buildings and fences and walls on some lots to require "conformity and harmony of external design with existing structures * * * and with respect to topography and finished ground elevation," the keeping of animals or fowls, and the disposal of rubbish; and prohibit the use of any temporary structure for residential purposes.

The ten lots are each 170 feet wide, and range in depth from 195 feet to 260 feet. The lots, and the area surrounding them, are devoted exclusively to substantial single-family residences. Mitchell and his wife purchased their residence in the subdivision in August 1970, paying $49,500 therefor. He completed erection of the tower in October, 1970, at a cost of $460. The tower has a present value of $390. It has an antenna consisting of several rods that extend horizontally from its top. It is supported by three groupings of support wires which attach to it at varying heights. According to a picture in evidence, the distance between the points of anchor of the support wires on the ground spans the length of Mitchell's house.

In Stewart v. Welsh, 142 Tex. 314, 178 S.W.2d 506, 508 (1944), the court was concerned with whether a picket fence constructed on and along a utility easement violated a subdivision restriction which prohibited a "structure of any kind" on the easement premises. Concluding, under the circumstances, that the fence was a prohibited structure, the court said:

"The word 'structure' is often used in a broad sense, often in a restricted sense. The broad definition is that quoted in Favro v. State, 39 Tex.Cr.R. 452, 46 S. W. 932, 73 Am.St.Rep. 950: 'Any production or piece of work artificially built up, or composed of parts joined together in some definite manner; any construction.' In a restricted sense 'structure' means: 'A building of any kind, chiefly a building of some size or of magnificence; an edifice.' 60 C.J. 666."

In La Vielle v. Seay (Ky.App., 1967) 412 S.W.2d 587, 592 a radio and TV tower

for home use was held to be a "structure" within the meaning of the word as used in subdivision restrictions that required prior approval by a committee of owners before any building, fence, wall "or other structure" could be erected or altered.

"That a radio tower comes within the accepted definition of the term 'structure' would seem to be beyond question", according to the court in Watson Industries v. Shaw, 235 N.C. 203, 69 S.E.2d 505, 509, citing Favro v. State, supra.

In Abel v. Bryant (Tex.Civ.App., 1962, no writ hist.) 353 S.W.2d 322, 324, the court held that two steel air-conditioning compressor and condensing units which were three feet square and 30 inches high and which rested on cement foundations were "structures" within the meaning of a restrictive covenant which provided that "No structure shall be located or erected on any lot * * * nearer than five (5) feet to any side plot line * * *."

The restrictive covenants requiring interpretation in Alexander Schroeder Lumber Co. v. Corona (Tex.Civ.App., 1956, writ ref., n. r. e.) 288 S.W.2d 829, were strikingly similar in their material features to those in the case at bar. They provided in Provision A thereof that all lots in the subdivision "shall be known and described as residential lots. No structure shall be altered, placed or permitted to remain on any residential building plot other than one detached one-family dwelling, not to exceed two and one-half stories in height, and a private garage with servant's quarters and other outbuildings incidental to the residential use only of the plot * * *." It was held that a wooden fence seven feet high which was built across the front of Block 3 of the subdivision was a "structure" in violation of the restriction. The court said:

"The defendants designate as the most essential issue in the case the question of whether the fence erected by the defendants is, as a matter of law, a structure within the interdiction of the covenant against all structures save in connection with residential use. We think it is. It is certainly a structure in the broad sense. See Stewart v. Welsh, 1944, 142 Tex. 314, 178 S.W.2d 506, 508. And the prohibition of the covenant is broadly sweeping in its terms. Under the covenant, the right to erect any structure at all is strictly dependent on the terms of the proviso. The language of the proviso is searched in vain for any clear right to erect a fence even for residential use.

"The only structures permitted by the proviso are: (a) detached family dwellings, (b) private garages with servants' quarters, and (c) other outbuildings incidental to residential use. Certainly the fence in question is not one of these."

 It is our conclusion that the word "structure" in the second section of the restrictions was used in the broader sense and includes Mitchell's radio tower. The restrictions as a whole show an intention to develop and maintain a subdivision of first-class, single-family residences. Section two thereof expressly prohibits the erection or placement of *any structure* on any lot *other than* one detached single-family dwelling, a garage for not more than three cars, and "outbuildings necessary for typical single-family use." The radio tower does not fall within the structures permitted by the restriction.

 In the judgment, the trial court correctly ordered the removal of the tower. However, the court went further and made findings "that a radio tower 125 feet in height on Defendant's property is unreasonable but that a radio tower at a height of 50 feet would be reasonable." The only question before the court was one of law, and the expression of fact-findings was neither necessary nor proper in a summary judgment proceeding. It was immaterial to the judgment and should be ignored on appeal. Cox v. Rhodes (Tex.Civ.App., 1950, no writ hist.) 233 S.W.2d 924, 926;

cited with approval on this point in Ditto v. Ditto Investment Company, 158 Tex. 104, 309 S.W.2d 219, 220.

The purported findings of fact in the judgment are disregarded. Otherwise, the judgment is affirmed.